IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:09-CV-00084-RLV-DSC

| | |
|---|---|
| ESTES EXPRESS LINES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| CARPENTER DECORATING | ) |
| COMPANY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Plaintiff Estes Express Lines, Inc.'s unopposed Motion for Default Judgment, filed June 19, 2012. (Doc. 16.)

## I. INTRODUCTION

Plaintiff is a common carrier regulated by the Surface Transportation Board (formerly the Interstate Commerce Commission ("ICC")). On July 22, 2009, Plaintiff filed its Complaint against Defendants Carpenter Decorating Company, Inc. ("Carpenter"), Doe Corporations 1–10, and John Does 1–10, alleging causes of action arising from unpaid freight charges. (Doc. 1.) On April 25, 2011, Plaintiff filed a Motion for Entry of Default against Defendant Carpenter (Doc. 10) and a Notice of Voluntary Dismissal as to Doe Corporations 1–10 and John Does 1–10 (Doc. 11). The following day, the Clerk of Court entered default as to Carpenter, and the remaining Defendants were terminated. Defendant Carpenter has yet to plead or appear, and Plaintiff now requests entry of default judgment pursuant to Federal Rule of Civil Procedure 55, an award of $187,735.54 pursuant to a pricing agreement, interest at the federal judgment rate per annum from the date the Amended Complaint was filed, reasonable costs, and attorney's fees. (Docs. 8,

1

16.)

Upon default, the well-pleaded allegations of the Complaint relating to liability are taken as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). However, Defendant, by his default, does not admit conclusions of law or that the movants are entitled to the relief they seek. *See Thomson v. Wooster*, 114 U.S. 104, 113 (1885) (stating that a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill"). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought . . . ." *Ryan*, 253 F.3d at 780.

## II. SUBJECT-MATTER JURISDICTION

As a court of limited jurisdiction, a district court must ensure that it has subject-matter jurisdiction before proceeding further. "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)). Ultimately, district courts "possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). However, merely "alleging violation of a federal statute is not always sufficient to invoke federal question jurisdiction." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). "What ultimately must be determined is whether Congress intended to create the private remedy asserted." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16 (1979).

The Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 13101 *et*

*seq*. ("ICCTA"), upon which Plaintiff asserts his jurisdictional basis, eliminated federal-question jurisdiction over state-law contract claims. Prior to 1995, carriers were required to maintain tariffs on file with the ICC.[1] 49 U.S.C. § 10762(a)(1) (1994) (repealed 1995); *Cent. Transp. Intern. v. Sterling Seating, Inc.*, 356 F. Supp. 2d 786, 789 (E.D. Mich. 2005). As a result, federal

---

[1] The Court notes the District of Columbia Circuit's historical narrative:

> Once upon a time the United States banned price competition among interstate motor carriers of freight. *See Howe v. Allied Van Lines, Inc.*, 622 F.2d 1147, 1152–54 (3rd Cir. 1980) (describing institution of tariff regime for railroads in 1887 and its extension to motor carriers in 1935). Each carrier was required to file with the late Interstate Commerce Commission a tariff of its prices and conditions of carriage. *See* 49 U.S.C. § 10762(a)(1) (1994) (repealed 1995). The carrier could not charge a shipper any rate other than the rate in the filed tariff, *see* 49 U.S.C. § 10761(a) (1994) (repealed 1995), give any shipper "preferential treatment," *see* § 10735(a)(1), or discriminate "unreasonably" in its charges to similarly situated shippers, *see* § 10741(b) (1994) (repealed 1995).
>
> . . .
>
> In 1995 the Congress found that motor carriage had become a "mature, highly competitive industry where competition disciplines rates far better than tariff filing and regulatory intervention," and that rate regulation was no longer necessary except for "[two] specialized categories of trucking operations." S.Rep. No. 104-176, at 10 (1995) (referring to household goods and certain noncontiguous domestic trade, hereinafter collectively "household goods"); *see id.* at 43 (noting that "for the two categories of traffic for which rates would be regulated, new [§ ] 13701(a) would import the basic rate reasonableness requirement"); *see also* 49 U.S.C. § 13701 (also imposing reasonableness requirement on "through routes," "divisions of joint rates," and rates "made collectively by [any group of] carriers under agreements approved" by the Surface Transportation Board). Therefore, the Congress abolished the ICC and repealed the provisions (1) requiring that a carrier file tariffs for all types of goods it transports; (2) prohibiting discrimination and preferential treatment; (3) prohibiting government requisition of reduced rate transport; and (4) permitting a carrier voluntarily to offer the Government reduced rates.
>
> The Congress then enacted a new statutory scheme under which a carrier need file tariffs only for the transportation of household goods, as to which preferential treatment is still prohibited. *See* 49 U.S.C. ch. 137, § 13704(a)(2) (Supp. I 1995).

*Munitions Carriers Conference, Inc. v. United States*, 147 F.3d 1027, 1028–29 (D.C. Cir. 1998).

jurisdiction under 28 U.S.C. § 1337 was present in cases where carriers sought to recover unpaid freight charges because the disputed charges were based upon such federally required tariffs. *Evans Transp. Servs. v. Northland Servs., Inc.*, No. 11-1713, 2012 WL 727019, at *2 (W.D. Wash. Mar. 6, 2012) (citing *GMG Transwest Corp. v. PDK Labs, Inc.*, No. 07-2548, 2010 WL 3710421, at *3 (E.D.N.Y. Aug. 12, 2010)). However, the ICCTA eliminated the need for filed tariffs, with limited exceptions, and claims for the collection of freight charges are now considered standard state-law breach-of-contract claims. *Id.*; *see also Mayflower Transit, LLC v. Interra Indus., LLC*, No. 07-5963, 2008 WL 2559358, at *2 (D.N.J. June 26, 2008) (determining that section 13706 does not create a federal cause of action).

Plaintiff here has repeatedly noted the "EXLA 105 Rules Tarriff" in its Amended Complaint, though without providing an explanation of this term. Courts have recognized that "tariffs continue to be the standard industry practice and the medium by which carriers publish their rates, classifications, rules and practices." *Estes Express Lines v. SMI Creations, Ltd.*, No. 09-1668, 2010 WL 1719291, at *2 (D. Colo. Apr. 27, 2010) (quoting *Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, No. 05-538, 2006 WL 1061892, at *4 (D. Ariz. April 19, 2006)). However, the fact that carriers label their contract documents "'tariffs' out of habit," *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000), neither imparts any special status nor subjects such contracts to the limited statutory or regulatory tariff requirements, *SMI Creations*, 2010 WL 1719291, at *2. It does not appear that the EXLA 105 Rules Tariff has any jurisdictional effect, and unless Plaintiff's claim falls within an ICCTA exception, there is no basis for federal jurisdiction.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff be provided eleven days from the date

4

this Order is filed to submit a memorandum establishing this Court's jurisdictional basis. If such a memorandum is not timely submitted, the case shall be dismissed for want of jurisdiction.

Signed: June 28, 2012

Richard L. Voorhees
United States District Judge